**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

WILLIAM SMITH                                              CIVIL ACTION

VERSUS                                                     NO. 06-3847

N. BURL CAIN, WARDEN                                       SECTION "B"(5)

<u>REPORT AND RECOMMENDATION</u>

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. §2254(e)(2).  Accordingly, it is recommended that the instant petition be **DENIED WITH PREJUDICE.**

<u>PROCEDURAL HISTORY</u>[1]

The Jefferson Parish District Attorney filed a bill of

---

[1]The court's recitation of petitioner's procedural history is taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal, <u>State v. Smith</u>, 862 So.2d 240, 242-243 (5th Cir. 2003).

1

information charging defendant, William Smith, with armed robbery and aggravated burglary in violation of LSA-R.S. 14:64 and 14:60.[2] After pleading not guilty, Smith filed a motion to appoint a sanity commission and was found incompetent to stand trial.  He received jail-based psychiatric treatment, as ordered, and was subsequently found competent to stand trial.

Smith thereafter proceeded to trial on the armed robbery charge.  After considering the evidence presented, the twelve person jury found him guilty as charged.  The trial judge sentenced him to sixty years at hard labor without the benefit of parole, probation or suspension of sentence.  The state then dismissed the aggravated burglary charge and filed a multiple offender bill of information alleging Smith to be a second felony offender based on a prior conviction for possession of cocaine.  After a hearing, the trial court found Smith to be a second felony offender, vacated his original sentence, and imposed an enhanced sentence of 150 years pursuant to the provisions of LSA-R.S. 15:529.1.

On November 25, 2003, the Louisiana Fifth Circuit Court of Appeal affirmed Smith's conviction and his adjudication as a second felony offender.  State v. Smith, 862 So.2d 240 (La. App. 5 Cir.

---

[2]Co-defendants, Richard Mitchell and Marvin Robinson, were also charged in the bill of information. The defendants were severed for purposes of trial.

2

2003).[3]  Less than a year later, on May 7, 2004, the Louisiana Supreme Court likewise denied Smith relief.  <u>State v. Smith</u>, 872 So.2d 1078 (La. 2004).

Following the conclusion of his direct appeal proceedings, Smith sought post-conviction relief.  His efforts in this regard culminated on April 24, 2006, when the Louisiana Supreme Court denied his writ application.  <u>State ex rel. Smith v. State</u>, 926 So.2d 537 (La. 2006).

In the instant federal habeas corpus action, Smith raises the following claims: 1) The trial court erred in allowing hearsay testimony; 2) His trial counsel was ineffective for failing to object to "other crimes evidence"; 3) His sentence was excessive; 4) His trial counsel was ineffective for "failing to object to references to other crimes evidence" and failing to request a <u>Prieur</u> hearing; 5) His trial counsel was ineffective for failing to file a motion to suppress his confession based upon the fact that he was deemed incompetent; 6) His trial counsel was ineffective by virtue of his failure "to secure a proffered plea bargain"; 7) The trial court erred in failing "to include the lesser included responsive verdict of aggravated robbery" and trial counsel was ineffective for failing to object to the trial court's failure to

---

[3]The state court of appeal remanded the matter to the district court for the limited purpose of providing Smith with written notice of his two-year prescriptive period for the purpose of seeking post-conviction relief.  <u>Id.</u> at 247-248.

provide jurors with the responsive verdict of aggravated robbery; and, 8) The trial court erred at the multiple offender adjudication when it failed to advise Smith of his right to remain silent before allowing him to admit to his identity in connection with a prior conviction.  The State, in its Response (rec. doc. 10, p. 4), admits that Smith has exhausted his state court remedies as required under Rose v. Lundy, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982), and that the instant action is timely. Accordingly, this court shall proceed to address the merits of Smith's claims following a review of the applicable facts.

**FACTS[4]**

In the early morning of September 14, 2000, Chanda Johnson was sleeping on a sofa in her apartment on Tallowtree Lane with her fifteen-month-old son lying on her chest when the front door was kicked open.  Ms. Johnson was grabbed off the sofa and thrown to the stairs.  The perpetrator yelled profanities and demanded where "it" was.  Ms. Johnson indicated "it," a Crown Royal sack containing approximately $60, was under the sofa pillow.  The perpetrator grabbed the sack and voiced his discontent with the meager contents of the sack.

Ms. Johnson was then shot twice.  Her injuries were so severe that she was not expected to live.  The record reflects

---

[4]The facts are taken from the Louisiana Fifth Circuit's opinion, Smith, 862 So.2d at 243-244, along with this court's review of the pertinent record.

that Ms. Johnson had approximately eight or nine full surgeries and a total of thirty surgical procedures as a result of her injuries.

Both the burglary and homicide units of the Jefferson Parish Sheriff's Office investigated the incident.  During its investigation, the police developed Smith as a suspect.  The police went to Smith's residence and brought Smith in for questioning on an unrelated incident, aggravated battery, which occurred eleven days prior and involved the same type of assault rifle used in the current incident.

Smith gave two statements.  His first statement pertained to the unrelated aggravated battery incident.  In that statement, Smith admitted having a Mac 90 assault rifle, the same type of gun that was used to shoot Ms. Johnson.  He also asserted an alibi for the current incident by stating that he was in Algiers with a friend at the time the victim was robbed and shot.

After his first statement, Smith was brought to several locations in an attempt to corroborate his alibi.  When confronted with the problems with his alibi, Smith gave a second statement during which he admitted his participation in the robbery and shooting of the victim.  In his second statement, Smith explained that, in the early morning hours of September 14, 2000, he and three of his friends, David Williams, Marvin Robinson, and Richard Mitchell, drove around Gretna looking for

someone to rob.  Being unsuccessful, they returned to the "Mary Poppins" area of Jefferson Parish, the area where the victim lived.[5]

According to Smith, he, along with his co-perpetrators, knew the victim, having purchased marijuana from her in the past. Mitchell, who was driving, parked the car behind the victim's apartment complex, then Smith, Williams and Robinson jumped out of the car and ran toward the victim's apartment.  Smith stated that Robinson had the gun, a cherry brown Mac 90 with a banana clip.

Smith stated that Robinson kicked in the door to the victim's apartment and ran inside with Williams.  Smith claimed that he stayed outside as a lookout.  Smith overheard Williams and Robinson ask "where its at."  He subsequently saw Williams fire two shots toward the stairs at which time he heard a female screaming.  Thereafter, all three perpetrators ran back to the car with only a purple Crown Royal sack that was taken from the victim's apartment.  Smith admitted that he knew they were going to the apartment to rob the victim, but denied that there was any discussion about shooting anyone.

---

[5]Sergeant John Drury, one of the Jefferson Parish officials who investigated the incident at issue, explained that the Mary Poppins area is comprised of two streets, Orange Blossom and Tallowtree.

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. §2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. §2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000). The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); <u>Hill</u>, 210 F.3d at 485.  Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it `was

based on an unreasonable determination of the facts in light of
the evidence presented in the State court proceeding.'" Hill, 210
F.3d at 485, quoting 28 U.S.C. §2254(d)(2).

**ANALYSIS**

### A.   Claim 1): Court Erred in Allowing Hearsay Testimony

Smith complains that the trial court erred in allowing
Detective Heather Gorman to testify with respect to statements
provided by Richard Mitchell and Marvin Robinson.  Smith
contends, and a review of the trial transcript reflects, that
Gorman offered testimony to the effect that after Smith
implicated Mitchell and Robinson in the incident at issue,
sheriff deputies interviewed both men and Robinson admitted his
participation in the crime.[6]  According to Smith, Gorman's
testimony in this regard was hearsay, inadmissible under
Louisiana Code of Evidence Article 801.  Smith further argues
that the admission of this hearsay testimony was not "harmless
error" because the testimony "corroborated the only single piece
of evidence [his own statement] linking [him] to the crime".[7]

It is well-established that federal courts possess only
limited authority to consider state evidentiary determinations in

---

[6]See Federal rec., doc. 3, Smith's supporting memorandum at p.
5; see also State rec., vol. 2 of 6, p. 164, lines 8-10; p. 170,
lines 4-30; and, p. 171, lines 1-12.

[7]See Federal rec., doc. 3, Smith's supporting memorandum at
pp. 6-7.

8

a state prisoner's habeas proceeding. Burgett v. Texas, 389 U.S. 109, 113-14, 88 S.Ct. 258, 260-61, 19 L.Ed.2d 319 (1967). As long as the evidentiary ruling is in accordance with state law and infringes no right protected under the Constitution, habeas relief is not warranted. Id. See also Robinson v. Whitley, 2 F.3d 562, 566 (5th Cir. 1993), cert. denied, 510 U.S. 1167, 114 S.Ct. 1197, 127 L.Ed.2d 546 (1994).

In examining the pertinent issue on direct appeal, the Louisiana Fifth Circuit Court of Appeal first reviewed applicable state law and acknowledged that under said law, Detective Gorman's testimony regarding what was said by Mitchell and/or Robinson was inadmissible hearsay. See Smith, 862 So.2d at 244-245. However, the state appellate court also noted that under state law, "[t]he admission of inadmissible hearsay is subject to a harmless error analysis" and concluded that the admission of Detective Gorman's hearsay testimony amounted to "harmless error", determining:

> The statements of Mitchell and Robinson played a minimal role in the case against [Smith]. The statements were only used to show that [Mitchell and Robinson] admitted their participation in the crime. While such evidence corroborated [Smith's] statement that he committed the offense with Mitchell and Robinson, it did nothing to establish any of the essential elements of the crime.

Id. at 245. The Louisiana Fifth Circuit specifically rejected Smith's argument that the hearsay testimony was not "harmless"

because it was the only evidence corroborating his statement, observing that Smith's statement, regarding his involvement in the pertinent crime, was also corroborated by the victim.  The state appellate court reasoned:

> In arguing the admission of the hearsay was not harmless error, [Smith] contends the statements of Mitchell and Robinson were the only evidence that corroborated his statement.  To the contrary, the victim's statement corroborated various aspects of [Smith's] statement.  The victim testified there was more than one perpetrator.  She stated the perpetrators bashed open the door which corroborated [Smith's] statement that entry was gained into the apartment by kicking in the door.  The victim explained her little boy was lying on her chest when the perpetrators broke into her apartment corroborating [Smith's] statement that he saw a little boy when he looked into the apartment.  The victim testified she was shot twice while [Smith] stated Williams shot two times.  The victim stated the perpetrators took a Crown Royal sack which corroborated [Smith's] statement that a purple Crown Royal sack was taken from the home.
>
> The use of Mitchell's and Robinson's statements was simply cumulative to the testimony of the victim and [Smith] that more than one perpetrator committed the offense.  Thus, we find any error in the admission of this part of Detective Gorman's testimony to be harmless.  Based on the foregoing discussion, this assigned error is without merit.

<u>Id</u>.

Clearly, the state appellate court's ruling with respect to Detective Gorman's hearsay testimony is in accordance with applicable state law and impinges no guarantee provided under the Constitution.  As such, Smith's claim for habeas corpus relief is without merit.

**B.  Claims 2), 4), 5), 6): Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is a mixed question of law and fact.  Boyle v. Johnson, 93 F.3d 180, 187 (5th Cir. 1996).  As such, this court may grant habeas relief only upon a determination that the state court decision rested on an unreasonable application of clearly established Supreme Court law to the facts of the case.  See Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).

The seminal Supreme Court decision regarding ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), wherein the Court held that in order to prove that counsel was unconstitutionally ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the Strickland test, "it is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993), citing Strickland,

11

466 U.S. at 690, 104 S.Ct. at 2066.  To prove prejudice under the
Strickland standard, petitioner "must show that there is a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

     In claims 2) and 4), Smith argues that counsel was
ineffective in failing to object to "other crimes" evidence and
failing to request a Prieur hearing.  The "other crimes" evidence
was presented via the direct testimony of Sergeant John Drury,
along with the admission of a taped statement from Smith.
Sergeant Drury made reference to an earlier investigation into a
claim that Smith had committed an aggravated battery against his
girlfriend.[8]  In his taped statement, Smith elaborated with
regard to the incident between himself and his girlfriend which
lead to the aggravated battery investigation.  Further, Smith
admitted that he had possessed an "assault rifle", a "Mac 90",
which he had taken after it had been abandoned in an apartment
following a shoot-out.[9]  Smith complains that the admission of
Drury's testimony and his taped statement regarding two crimes,
aggravated battery and theft, was "irrelevant" to the armed
robbery charge for which he was standing trial and defense

_____

     [8]See State rec., vol. 2 of 6, p. 191, lines 6-8; p. 194, lines
11-19.

     [9]See State rec., vol. 2 of 6, p. 202, lines 6-10; p. 204,
lines 4-30; pp. 205-206; p. 207, lines 1-10.

counsel should have objected to same "as inadmissible references to other crimes".[10]

Smith's ineffectiveness claim is without merit for several reasons. First, Smith cannot show the requisite deficiency on the part of counsel, in connection with Sergeant Drury's direct testimony regarding the aggravated battery incident, in light of the fact that counsel did, in fact, object to the pertinent testimony. A review of the trial transcript reflects the following colloquy:

DIRECT EXAMINATION OF SERGEANT JOHN DRURY:
Q. [W]hat is the aggravated battery you are referring to?

A. There was an incident that was filed with the Sheriff's Office under Item Number I2442 of 2000 whereby an acquaintance or girlfriend, if you will, of Mr. Smith alleged that she was - -

BY MR. DOYLE (Defense Counsel):
Your Honor, I'm going to object to the relevancy in this trial, where he's charged with armed robbery or any other charges is - - has no bearing on this matter....

BY THE COURT:
Overruled. Go ahead....

BY MR. FREEZE (Assistant District Attorney):
Q. Is it fair to say that the aggravated battery that you list as the subject of investigation on that form

---

[10] See Federal rec., doc. 3, Smith's supporting memorandum at pp. 9 and 16.

is a crime other than the one for which Mr. Smith is on
trial today?

A.  It is a separate offense.

Q.  And that is the September 3rd incident - -

BY MR. DOYLE:
Once again, Your Honor, it's a continuing objection as
to this offense.  We're here on armed robbery.  We have
nothing to do with aggravated battery.  It may be
investigatory, but it's not relevant here.

BY THE COURT:
Alright.  Get to your point, Mr. Freeze.  I'm going to
overrule [the objection] and allow you a little
latitude, but just speed up to where you need to be.[11]

Following defense counsel's "continuing objection", no further

mention was made, in connection with Sergeant Drury's testimony,

to the aggravated battery incident involving Smith and his

girlfriend.

Even if Smith was able to make the required deficiency

showing, his ineffectiveness claim, in connection with the

admission of the above direct testimony of Sergeant Drury, along

with the admission of his taped statement regarding the

aggravated battery incident and his theft of an assault rifle, is

without merit because he cannot show the requisite prejudice

given the overwhelming evidence submitted at trial reflecting his

---

[11]See State rec., vol. 2 of 6, p. 194, lines 14-23; p. 195,
lines 25-26 and line 30; p. 196, lines 1-14.

guilt. Specifically, Smith, in a taped statement to Sergeant Drury, admitted that he and three companions, David Williams, Marvin Robinson, and Richard Mitchell, planned to rob the victim, a person from whom, in the past, they had all purchased "weed".[12] Smith admitted that they had a gun, specifically, a "Mac 90", in their possession,[13] and that he, along with Williams and Robinson, went to the victim's door and Robinson "kicked in the door".[14] Further, Smith stated that he saw Williams fire two shots, heard a female scream, and saw that a "purple sack", a "Crown Royal sack", was taken from the victim's house.[15]

Additionally, Smith, in his taped confession, provided details regarding the armed robbery which were corroborated by the victim. Smith stated that during the armed robbery, he "peeped" inside the victim's house and saw "a little boy ... in there."[16] The victim confirmed, at trial, that her "baby boy", who was approximately 15 to 16 months old, was downstairs with

---

[12]See State rec., vol. 2 of 6, p. 226, lines 5-23; p. 227, lines 8-16; p. 228, lines 13-14; p. 236, lines 2-19.

[13]See State rec., vol. 2 of 6, p. 228, lines 13-27.

[14]See State rec., vol. 2 of 6, p. 239, lines 3-16.

[15]See State rec., vol. 2 of 6, p. 241, lines 22-30; p. 242, lines 1-3 and lines 18-27; p. 243, line 30; p. 244, lines 1-7.

[16]See State rec., vol. 2 of 6, p. 239, lines 8-20.

her when her door was "bash[ed] in".[17]  Further, the victim, in accordance with Smith's confession, admitted that prior to the armed robbery, she had sold marijuana from her house, that a "Crown Royal" sack had been taken from her house, and that she had been shot twice.[18]

Finally, Smith argues that counsel was unconstitutionally ineffective, and he is entitled to habeas corpus relief, due to counsel's failure to request a hearing pursuant to State v. Prieur, 277 So.2d 126, 130 (La. 1973), a case wherein it was established that the State, prior to trial, must provide notice, and a corresponding hearing must be conducted, of its intent to admit "other crime" evidence.  Smith's argument in this regard, however, is without merit because, under Prieur, the duty is upon the prosecution, not the defense, to call a Prieur hearing. Further, the fact that a state court proceeding may be violative of a state law, specifically, the requirement, under Prieur, that a hearing be conducted before the introduction, at trial, of "other crime" evidence, is irrelevant for purposes of attaining habeas corpus relief.  Federal habeas review is limited to questions of constitutional dimension.  See generally Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992), cert. denied, 508

---

[17]See State rec., vol. 2 of 6, p. 183, lines 23-24; p. 184, lines 1-4 and line 15.

[18]See State rec., vol. 2 of 6, p. 181, lines 25-30; p. 185, lines 5-7; p. 186, lines 5-6.

U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); Castillo v. Johnson, 141 F.3d 218, 222 and 224 (5th Cir.), cert. denied, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998).

In claim 5), Smith argues that counsel was ineffective due to his failure to object to the September, 2000 statements he provided to Sergeant Drury.  According to Smith, counsel should have objected based upon the fact that at Smith's initial sanity commission examination, in November, 2001, he was diagnosed as having "a mild to moderate form of probable bipolar disorder."[19] According to Smith, if he had a bipolar disorder in November, 2001, he must have also had the disorder in September, 2000, when he confessed to the armed robbery at issue and counsel, therefore, should have moved to suppress his confession.  For the following reasons, Smith's argument is without merit.

First, a review of the pertinent record reflects that defense counsel did, in fact, object to the admission of Smith's confession.  Counsel filed a motion to suppress Smith's confession to Sergeant Drury and a hearing was held on October 9, 2001.  At this hearing, defense counsel questioned Smith extensively with regard to any mental deficiencies, establishing

---

[19]See State rec., vol. 1 of 6, p. 147.  As sanity commission member, Dr. Richard Richoux, explained at a March 6, 2002 sanity commission hearing, Smith, following the initial bipolar diagnosis, was prescribed Lithium and ultimately determined competent to stand trial.  See State rec., vol. 1 of 6, p. 147, lines 13-30; p. 148, lines 1-11.

17

that Smith did not read or write well, and that he had been "in special ed[ucation] since the first grade."[20]  Smith, during this hearing, made no mention of any past psychiatric problems. Second, petitioner's unsubstantiated allegation to the effect that defense counsel was made aware of the fact that he had been treated, in the past, for "psychological problems"[21], is directly refuted by the sworn testimony of his defense counsel, William Doyle.  At a May 12, 2005 post-conviction hearing, Doyle responded in the negative when asked whether or not he had been aware of Smith having had "any prior medical treatment or psychiatric treatment, or treatment for his Bipolar disorder".[22]

In claim 6), Smith contends that he received ineffective assistance of counsel by virtue of counsel's failure to inform him "until after trial had started and after the State had presented testimony and evidence", of a plea bargain offered by the State pursuant to which he would have received a 30-year sentence.  Smith contends that had he known about it, "he would have accepted the plea bargain".[23]

---

[20] See State rec., vol. 1 of 6, p. 110.

[21] See Federal rec., doc. 3, Smith's supporting memorandum at p. 20.

[22] See State rec., vol. 6 of 6, transcript of May 12, 2005 post-conviction hearing at p. 25. lines 6-10.

[23] See Federal rec., doc. 3, Smith's supporting memorandum at pp. 23-24.

The above argument was specifically rejected by the state district court in connection with Smith's post-conviction application based upon the court's finding, following its review of the pertinent record, that Smith was, in fact, informed of the State's plea offer prior to the State's introduction of testimony and evidence.  Specifically, 24th Judicial District Court Judge Fredericka Wicker provided:

> [Smith] claims that defense counsel was ineffective for failing to inform him of the plea bargain of thirty (30) years imprisonment.  He claims that defense counsel only informed him after the trial had commenced and after the State presented testimony and evidence. A review of the record reveals that the jury was selected and outside the presence of the jurors [Smith] was sworn in and notified of the plea bargain.  The jury returned and the Bill and [Smith's] plea were read in court.  [Smith] was notified of the plea bargain prior to the State introducing witnesses and evidence. Thus, [Smith's] claim is without merit.[24]

The above finding of the state district court is confirmed by the trial court's September 10, 2002 minutes which reflect that Smith, outside the jury's presence, "was sworn in and notified of the plea bargain".[25]  Accordingly, Smith's claim for habeas corpus relief, based upon counsel's alleged ineffectiveness in failing to timely inform him of the State's plea offer, is without merit.

---

[24]A copy of Judge Wicker's December 1, 2004 Order is contained in the State rec., vol. 4 of 6.

[25]A copy of the pertinent minutes are contained in the State rec., vol. 1, pp. 28-29.

## C.   Claim 3):   Excessive Sentence

Smith, in connection with his armed robbery conviction, was sentenced, as a second felony offender, to imprisonment for a period of 150 years.  Smith acknowledges that his 150-year sentence was, under the provisions of LSA-R.S. 15:529.1, within the applicable statutory sentencing range of 49 and 1/2 years to 198 years.  Nevertheless, Smith argues that his sentence was "disproportionate to the crime in this case" and therefore, violative of the Eighth Amendment's prohibition against cruel and unusual punishment.[26]

In Harmelin v. Michigan, 501 U.S. 957, 962, 111 S.Ct. 2680, 2684, 115 L.Ed.2d 836 (1991), quoting Rummel v. Estelle, 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1980), the Supreme Court specifically rejected the principle that the Eighth Amendment contains a proportionality guarantee, reasoning that "'for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative.'"  If a sentence is within the statutory limits, a federal habeas court will not upset the terms of that sentence unless it is so disproportionate to the offense as to be completely arbitrary and shocking.

---

[26]See Federal rec., doc. 3, Smith's supporting memorandum at p. 12.

Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir. 1975); see also
Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir. 1996)
(emphasizing that a federal court will not review a state
sentencing without a threshold showing that the sentence is
"grossly disproportionate to the offense").

Smith argues that his sentence is unconstitutionally
disproportionate to his offense because: 1) He was not the
"shooter"; 2) His role in the robbery was limited to being "the
lookout"; 3) He "cooperated with the police", providing them with
"the names of the other three individuals involved"; 4) His prior
conviction was for a non-violent offense, possession of cocaine;
5) While his "co-perpetrators may have had a plan to shoot [the
victim] before they entered her apartment", he did not plan to do
anything more than rob her; and, 6) He "has a history of mental
disorder".[27]  Smith raised these same arguments in connection
with his direct appeal.  See Smith, 862 So.2d at 246.  The
Louisiana Fifth Circuit Court of Appeal rejected Smith's
arguments, reasoning:

> Contrary to [Smith's] assertion, the fact he did
> not actually enter the apartment, take the money, or
> fire the bullet that struck the victim does not entitle
> him to a lesser sentence.  All persons concerned in the
> commission of a crime, whether present or absent, are
> equally culpable.  State v. Hampton, 98-0331
> (La.4/23/99), 750 So.2d 867, 880, cert. denied, 528

---

[27]See Federal rec. doc. 3, Smith's supporting memorandum at pp.
12-13.

U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999).
Additionally, although [Smith] suffers from a mental
disorder (i.e., bipolar disorder), he knew what he was
doing.  He admitted knowing that he and his co-
perpetrators went to the victim's home to rob her.  The
trial judge was fully aware of [Smith's] mental state
when she imposed sentence.  Finally, the fact [Smith's]
prior conviction was for a non-violent offense does not
make his present sentence excessive.  [Smith]
progressed from a non-violent crime to a violent crime
that almost killed the victim.

<u>Smith</u>, 862 So.2d at 247 (footnote omitted).

In denying Smith's excessive sentence claim, the Louisiana
Fifth Circuit also pointed to the reasons provided by the trial
court in imposing Smith's 150-year enhanced sentence:

[T]he trial judge ... noted that the victim was shot in
the back and required seven or eight surgeries.  The
prosecutor corrected the judge stating the victim
underwent eight or nine full surgeries and
approximately 30 surgical procedures.  The trial court
further stated the victim, who could barely walk to the
witness stand, continues to receive medical treatment
and faces future surgeries.  The trial court admonished
[Smith] by stating he caused severe injury to a
helpless woman who was holding a child.

<u>Id</u>.  The state appellate court added:

[W]e further note that armed robbery is a serious
offense against the person.  [Smith] participated in a
crime wherein the door to the victim's apartment was
kicked open while she slept on the couch holding her
toddler son.  The victim's additional children were
upstairs.  The victim was shot twice resulting in such
severe injuries that she was not expected to live, as
evidenced by the investigation of the crime by the
homicide division.  Two years after the crime, the
victim continued to visibly suffer from her injuries.

22

Id.

This court finds that the above reasoning on the part of the Louisiana Fifth Circuit Court of Appeal does not constitute an unreasonable application of pertinent Supreme Court law to the facts of this case.  See Williams, supra.[28]  Accordingly, Smith's claim for habeas relief based upon the alleged excessiveness of his sentence is without merit.

**D.  Claim 7:  Trial Court Erred in Failing to Include the Lesser Included Responsive Verdict of Aggravated Robbery and Trial Counsel was Ineffective in Failing to Object to Same**

Smith claims "that the trial court erred when it failed to include the lesser and included crime of aggravated robbery as a responsive verdict to the charged offense of armed robbery, and counsel was ineffective for failing to object to the same."[29] Smith's argument in this regard is without merit as it is based upon the inaccurate factual premise that the crime of aggravated robbery is a lesser and included crime to the charge of armed robbery.  As the state district court, in rejecting the instant claim in connection with Smith's post-conviction application, noted:

Pursuant to La.C.Cr.P. Art. 814, the only responsive

---

[28]Discussion regarding the Supreme Court's reasoning in Williams is set forth supra at p. 7.

[29]See Federal rec., doc. 3, Smith's supporting memorandum at pp. 25-26.

verdicts which may be rendered when the indictment charges armed robbery are:  Guilty, Guilty of Attempted Armed Robbery, Guilty of First Degree Robbery, Guilty of Attempted First Degree Robbery, Guilty of Simple Robbery, Guilty of Attempted Simple Robbery, and Not Guilty.  A review of the jury charges reveals that the trial court gave the proper jury charges according to the law.  Defense counsel was not ineffective for not objecting to the jury charges.  Thus, [Smith's] claim is without merit.[30]

**E.  Claim 8): Trial Court Erred at Multiple Offender Adjudication By Failing to Advise Smith o His Right to Remain Silent Before Allowing Him to Admit His Identity in Connection with a Prior Conviction**

Smith contends that the trial court erred by virtue of the court's failure to advise him of his right to remain silent, thereby allowing Smith to admit to being a second felony offender.  Smith's argument in this regard, however, is without merit since, as a review of Smith's October 17, 2002 multiple offender adjudication transcript reflects, and as the state district court noted in rejecting the instant claim, Smith did not admit to being a second felony offender.  Instead, the State, pursuant to its submission of unrefutable evidence, proved that Smith was a previously convicted felon.  As the state district court, in its January 7, 2005 Order, observed:

[Smith] pled not guilty to the Multiple Bill of Information on September 23, 2002.  On October 17, 2002, a Multiple Bill Hearing was held and the State introduced certified copies of the previous felony

_____

[30]A copy of the state district court's December 1, 2004 Order denying Smith post-conviction relief is contained in the State rec., vol. 4 of 6.

conviction.   Further, the State introduced testimony
from an expert in the field of latent fingerprint
identification which showed that [Smith] was one and
the same person previously convicted of a felony.  (See
October 17, 2002 transcript, pp. 9-10).   The transcript
also reveals that [Smith] and his attorney were shown
the fingerprint card introduced as evidence by the
State.  (See October 17, 2002 transcript, pg. 8).   The
trial court found that the State met its burden of
proof that [Smith] was a second felony offender.  (See
October 17, 2002, pg. 11).   The trial court then
vacated the original sentence and imposed a 150 year
sentence under the multiple statute.  (See October 17,
2002, pg. 11).   [Smith] did not plead guilty to the
Multiple Bill of Information.   Thus, [Smith's] claim is
without merit.[31]

Accordingly;

---

[31]A copy of the state district court's January 7, 2005 Order,
along with a copy of the transcript of Smith's October 17, 2002
multiple offender adjudication, is contained in the State rec.,
vol. 4 of 6.   Smith, in support of the instant claim, cites
colloquy from his multiple offender adjudication which provides:

MR. DOYLE (defense counsel):
Your Honor, for the record, Mr. Freeze (assistant
district attorney)has given me a copy of a multiple bill.
I have shown it to my client and he's looking at it.   I
also have him, as we speak, he's signing a waiver of
rights, and a plea of guilty to the multiple bill which
he should complete very shortly.

BY THE COURT:
Okay.

See Federal rec., doc. 3, Smith's supporting memorandum at p. 33;
see also State rec, vol. 4 of 6, October 17, 2002 multiple offender
adjudication transcript at p. 12.   However, the above dialogue
offers no support for Smith's claim that he admitted to his prior
conviction since said dialogue took place after the trial court,
based upon the evidence submitted by the State, had already
determined that Smith was a second felony offender.   See State
rec., vol. 4 of 6, October 17, 2002 multiple offender adjudication
transcript at p. 11.

## RECOMMENDATION

It is hereby RECOMMENDED that the petition of William Smith for habeas corpus relief be DENIED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 24th day of ___March___, 2008.

ALMA L. CHASEZ
United States Magistrate Judge

26