UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**WILLIAM SMITH**                                                          **CIVIL ACTION**

**VERSUS**                                                                 **NO. 06-3847**

**BURL CAIN - WARDEN**                                                     **SECTION: "B"**

## ORDER AND REASONS

Before the Court is Petitioner's objection to the Magistrate's Report and Recommendation, and his application for *Habeas Corpus*. For the following reasons, **IT IS ORDERED**, that the Magistrate's Report and Recommendation be adopted as the opinion of the Court, overruling Petitioner's objections and thereby **DENYING** Petitioner's federal *Habeas Corpus* application.

William Smith, a pro se state prisoner, petitions for § 2254 *habeas corpus* relief based on: (1) trial court error in allowing hearsay testimony; (2) ineffective trial counsel for failing to object to "other crimes" evidence; (3) excessive sentence; (4) ineffective trial counsel for failing to object to reference to "other crimes" evidence, and failing to request a *Prieur* hearing; (5) ineffective trial counsel for failing to file a motion to suppress confession based upon petitioner being deemed incompetent; (6) ineffective trial counsel for failing to "secure a proffered plea bargain;" (7) trial court erred in failing "to include the lesser included responsive verdict of aggravated robbery," and trial counsel was ineffective for failing to object

to the trial court's failure to provide jurors with the responsive verdict of aggravated robbery; (8) trial court erred at the multiple offender adjudication by failing to advise petitioner of his right to remain silent before allowing him to admit his identity in connection with a prior conviction.

**Facts of Case**:

William Smith (hereinafter "petitioner") is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Petitioner is serving a one-hundred-and-fifty-year (150) sentence in relation to an habitual offender conviction that stemmed from an armed robbery charge and conviction.

The following summary of events leading to the arrest and conviction of the petitioner is taken from the published court of appeal decision.

> In the early morning of September 14, 2000, Chanda Johnson was sleeping on a sofa in her apartment on Tallowtree Lane with her fifteen-month-old son lying on her chest when the front door was kicked open. Ms. Johnson was grabbed off the sofa and thrown to the stairs. The perpetrator yelled profanities and demanded where "it" was. Ms. Johnson indicated "it," a Crown Royal sack containing approximately $60, was under the sofa pillow. The perpetrator grabbed the sack and voiced his discontent with the meager contents of the sack.
>
> Ms. Johnson was then shot twice. Her injuries were so severe that she was not expected to live. The record reflects that Ms. Johnson had approximately eight or nine full surgeries and a total of thirty surgical procedures as a result of her injuries.
>
> Both the burglary and homicide units of the Jefferson Parish Sheriff's Office investigated the incident. During its investigation, the police developed Smith as a suspect. The

police went to Smith's residence and brought Smith in for questioning on an unrelated incident, aggravated battery, which occurred eleven days prior and involved the same type of assault rifle used in the current incident.

Smith gave two statements. His first statement pertained to the unrelated aggravated battery incident. In that statement, Smith admitted having a Mac 90 assault rifle, the same type of gun that was used to shoot Ms. Johnson. He also asserted an alibi for the current incident by stating that he was in Algiers with a friend at the time the victim was robbed and shot.

After his first statement, Smith was brought to several locations in an attempt to corroborate his alibi. When confronted with the problems with his alibi, Smith gave a second statement during which he admitted his participation in the robbery and shooting of the victim. In his second statement, Smith explained that, in the early morning hours of September 14, 2000, he and three of his friends, David Williams, Marvin Robinson, and Richard Mitchell, drove around Gretna looking for someone to rob. Being unsuccessful, they returned to the "Mary Poppins" area of Jefferson Parish, the area where the victim lived.

According to Smith, he, along with his co-perpetrators, knew the victim, having purchased marijuana from her in the past. Mitchell, who was driving, parked the car behind the victim's apartment complex, then Smith, Williams and Robinson jumped out of the car and ran toward the victim's apartment. Smith stated that Robinson had the gun, a cherry brown Mac 90 with a banana clip.

Smith stated that Robinson kicked in the door to the victim's apartment and ran inside with Williams. Smith claimed that he stayed outside as a lookout. Smith overheard Williams and Robinson ask "where its at." He subsequently saw Williams fire two shots toward the stairs at which time he heard a female screaming. Thereafter, all three perpetrators ran back to the car with only a purple Crown Royal sack that was taken from the victim's apartment. Smith admitted that he knew they were going to the apartment to rob the victim, but denied that there was any discussion about shooting anyone.

*State v. Smith*, 862 So. 2d 240, 243-44 (La. Ct. App. 2003) (footnotes omitted).

**Procedural History**:

The Magistrate Judge has adopted the following procedural history as taken from the published court of appeal decision. The procedural history contains the petitioner's charge and conviction of armed robbery, his multiple offender charge, conviction, and enhanced sentence, as well as his eight (8) claims in relation to his federal *habeas* application.

> The Jefferson Parish District Attorney filed a bill of information charging defendant, William Smith, with armed robbery and aggravated burglary in violation of LSA-R.S. 14:64 and 14:60. After pleading not guilty, Smith filed a motion to appoint a sanity commission and was found incompetent to stand trial. He received jail-based psychiatric treatment, as ordered, and was subsequently found competent to stand trial.
>
> Smith thereafter proceeded to trial on the armed robbery charge. After considering the evidence presented, the twelve person jury found him guilty as charged. The trial judge sentenced him to sixty years at hard labor without the benefit of parole, probation or suspension of sentence. The state then dismissed the aggravated burglary charge and filed a multiple offender bill of information alleging Smith to be a second felony offender based on a prior conviction for possession of cocaine. After a hearing, the trial court found Smith to be a second felony offender, vacated his original sentence, and imposed an enhanced sentence of 150 years pursuant to the provisions of LSA-R.S. 15:529.1.
>
> On November 25, 2003, the Louisiana Fifth Circuit Court of Appeal affirmed Smith's conviction and his adjudication as a second felony offender. State v. Smith, 862 So.2d 240 (La. App. 5 Cir. 2003). Less than a year later, on May 7, 2004, the Louisiana Supreme Court likewise denied Smith relief. State v. Smith, 872 So. 2d 1078 (La. 2004).
>
> Following the conclusion of his direct appeal proceedings, Smith sought post-conviction relief. His efforts in this regard

> culminated on April 24, 2006, when the Louisiana Supreme Court denied his writ application. State ex rel. Smith v. State, 926 So.2d 537 (La. 2006).
>
> In the instant federal habeas corpus action, Smith raises the following claims: 1) The trial court erred in allowing hearsay testimony; 2) His trial counsel was ineffective for failing to object to "other crimes evidence"; 3) His sentence was excessive; 4) His trial counsel was ineffective for "failing to object to references to other crimes evidence" and failing to request a Prieur hearing; 5) His trial counsel was ineffective for failing to file a motion to suppress his confession based upon the fact that he was deemed incompetent; 6) His trial counsel was ineffective by virtue of his failure "to secure a proffered plea bargain"; 7) The trial court erred in failing "to include the lesser included responsive verdict of aggravated robbery" and trial counsel was ineffective for failing to object to the trial court's failure to provide jurors with the responsive verdict of aggravated robbery; and, 8) The trial court erred at the multiple offender adjudication when it failed to advise Smith of his right to remain silent before allowing him to admit to his identity in connection with a prior conviction. The State, in its Response (rec. doc. 10, p. 4), admits that Smith has exhausted his state court remedies as required under Rose v. Lundy, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982), and that the instant action is timely. Accordingly, this court shall proceed to address the merits of Smith's claims following a review of the applicable facts.

*State v. Smith*, 862 So. 2d 240, 243-44 (La. Ct. App. 2003) (footnotes omitted).

**Analysis:**

The Magistrate Judge has determined that petitioner has indeed exhausted his state court remedies and has filed a timely federal habeas application. Also, the Magistrate Judge has determined that this case in fact governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214, and that the standard of review of mixed questions of

law and fact is governed by 28 U.S.C. 2254(d)(e):

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> **(e)(1)** In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. 2254(d)(e).

**Claim I:  Trial Court Erred in Allowing Hearsay Testimony**:

Petitioner claims that the court erred in allowing Det. Gorman to testify in reference to petitioner's co-conspirators, one of which admitted to participating in the crime.  Petitioner asserts that such testimony is barred as inadmissible hearsay under the Louisiana Code of Evidence Articles 801, 802, and 804.[1] Specifically, petitioner asserts that the admission of hearsay evidence was not a harmless error, for it corroborated his prior admission, which was the only evidence connecting him to the crime at hand.

---

[1] *See*, footnotes 1, 2, and 3, *supra*.

The Louisiana Fifth Circuit Court of Appeals has reviewed this claim,[2] and has determined that under the applicable law, Det. Gorman's testimony was inadmissable as hearsay, but, the error was harmless.  As noted above, "[h]earsay evidence, which is improperly admitted into evidence, may be considered harmless error if the reviewing court determines beyond a reasonable doubt that the hearsay evidence did not contribute to the verdict." *Richardson*, 729 So. 2d at 122.  Petitioner's admission was not the only evidence linking him to the crime because petitioner's accounts were also corroborated by the victim.  For instance, the victim testified that: her door was kicked in; there was more than one perpetrator; her young son was lying on her chest; she was shot twice; and that a Crown Royal bag was stolen from her apartment.  All of the victim's aformentioned testimony corroborated the petitioner's previous statements to the police.  Therefore, Det. Gorman's testimony in regards to petitioner's co-perpetrator's admission of involvement in the crime was not the only thing linking petitioner to the crime, via his statements to the police.  Petitioner's statements were effectively corroborated by the victim herself.  Therefore, the trial court allowing Det. Gorman's testimony was a harmless error and petitioner's claim is without merit.  Due deference is also given to the state court's factual findings and interpretations of the

---

[2] *State v. Smith*, 862 So. 2d 240, 244-45 (La. Ct. App. 2003).

state's rules of evidence along with the effects from a violation of those rules, especially where federal constitutional violations are not implicated.

### Claim II: Ineffective Counsel for Failing to Object to Other Crimes Evidence

Petitioner's claim of ineffective assistance of counsel for failure to object to other crimes is a mixed question of law and fact, and as such is subject to 28 U.S.C. 2254(d)(e), and the two prong test set forth in *Strickland v. Washington*. In order to show that trial counsel was ineffective, petitioner must first, prove that counsel's performance was deficient and second, that the deficiency prejudiced petitioner's defense. *Strickland,* 466 U.S. at 687. The two prong test is conjunctive, where a failure of either prong is a prima facie failure of the claim.

A review of the record shows that petitioner's counsel did in fact object and was overruled several times during Sgt. Drury's testimony.[3] Because the un-refuted record belies the instant claim, petitioner cannot satisfy the deficiency prong; the first prong of *Strickland*, which is enough to cause his claim to fail. Also, petitioner cannot satisfy the second prong of *Strickland*, generally because trial counsel was not deficient, and specifically because there was no prejudice in

---

[3] Rec. Vol. II, p. 194, 1. 9-13 and 16-19.

light of the evidence against him, i.e., petitioner's taped confession and victim's corroborating testimony.  Petitioner's claim must fail.

**Claim III: Excessive Sentence**

Petitioner claims that his sentence of one-hundred-and-fifty-years (150) as an habitual offender is excessive.  Under LSA-R.S. 15:529.1,[4] petitioner's sentence is within the applicable range of forty-nine-and-one-half-years (49 & ½) to one-hundred-and-ninety-eight-years (198).  Petitioner argues in his supplemental memorandum that his sentence is disproportionate to his role in the crime, in violation of the Eight Amendment.  As noted by the Magistrate Judge, "the Eight Amendment contains no proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991).

Petitioner argues that there are extenuating circumstances that should balance against the imposition of his enhanced

---

[4] LSA-R.S. 15:529.1, states pertinent part:  A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;

sentence, e.g., he is not the shooter, cooperated by naming co-co-conspirators, only prior conviction was for a non-violent crime, denied planning to shoot the victim, and he has a mental disorder and lacks education.  According to LSA-R.S. 14:24, "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."  Even if all of the petitioner's claims are taken at face value it is of no consequence.  According to LSA-R.S. 14:24, petitioner is equally at fault for the crime against the victim.  Petitioner was found to be a second felony offender, and petitioner's enhanced sentence falls within the range provide in LSA-R.S. 15:529.1.  Again, deference is accorded to state court's findings that do not violate federal constitutional law.  Petitioner's claim is baseless.

### Claim IV: Ineffective Counsel for Failure to Request a *Prieur* Hearing

Petitioner claims that his trial counsel was ineffective for failing to object to other crimes evidence and failing to request a *Prieur* hearing.[5]  Petitioner contends that his trial counsel should have called for a *Prieur* hearing, but failed to do so.  In *Prieur*, the Court states, "[w]hen the State intends

---

[5]. Petitioner's claim in respect to other crimes evidence has been addressed in claim number II.

to offer evidence of other criminal offenses . . . ." *State v. Prieur,* 277 So. 2d 126, 130 (La. 1973). The Court makes it clear that the burden is on the State, not the defense to provide notice and call for a hearing in order to admit evidence of other crimes. *Id*. It seems apparent that since the burden is on the state to call for a *Prieur* hearing, in order to protect potential defendants, the defense could not and should not have called for such a hearing. The petitioner is confused on the law and his claim is misguided, therefore it is without merit. Moreover, the perceived failure would not have any effect on the outcome here.

### Claim V: Counsel's Failure to File a Motion to Suppress based on Incompetence

Petitioner claims that his trial counsel was ineffective for failing to file a motion to suppress his pre-trial confession based on petitioner being found incompetent. Petitioner was found incompetent after a his defense filed for a motion to appoint *Sanity Commission*.[6] Petitioner claims that he was mentally ill when he gave his confession, because he was subsequently found incompetent. The record shows that petitioner's defense counsel did in fact file a motion to suppress statements,[7] albeit not specifically due to petitioner

---

[6] *See*, footnote 28, *supra.*

[7] See, footnote 27, supra.

being found incompetent. Moreover, defense counsel extensively examined petitioner about mental deficiencies at hearing on the Motion to Suppress. There is no factual support for petitioner's claim that he told counsel about prior psychological problems or treatment.

This claim was considered and rejected by the state district court.[8] It is evident that trial counsel did file a motion to suppress which was considered and rejected. Petitioner cannot prove that he was mentally ill at the time of his confession and the doctors would not be able to determine if he was mentally ill at that time without prior medical records,[9] which there are none. Even if petitioner could satisfy the first prong of *Strickland*, because his counsel did not raise mental incompetence specifically, petitioner cannot prove that prejudiced him and therefore cannot satisfy the second prong of *Strictland*. Because trial counsel did file a motion to suppress, and because it is not possible to prove that petitioner was mentally ill at the time of his confession; petitioner's claim must fail.

**Claim VI: Ineffective Trial Counsel for Failure to Secure Proffered Plea Bargain**

Petitioner claims that his trial counsel was ineffective for

---

[8] Evidentiary Hearing, 5/12/05 Tr. pp. 9; 23.

[9] State Rec., Vol. 6 of 6, transcript of May 12, 2005 post conviction hearing at p. 25.

failing to notify him and secure the District Attorney's plea bargain of thirty-years (30). Specifically, petitioner states that he was not made aware of the plea bargain until the trial had already begun and the offer was no longer available. Petitioner asserts that due to the evidence against him, he would have accepted the offer, had he have known about it.

This claim was brought before the 24th Judicial District Court and rejected. A review of the State Record reveals that petitioner was in fact made aware of the plea bargain, in the absence of the jury, and that the petitioner expressly rejected the District Attorney's offer.[10] Again, petitioner's claim is contradicted by the State Record as untrue. Petitioner cannot satisfy either prongs of *Strictland*. Therefore petitioner's claim is without merit.

### Claim VII: Trial Court Erred in Failing to Include a Lesser Responsive Verdict

Petitioner claims that the trial court erred in failing to include the lesser responsive verdict of aggravated robbery, and that his trial counsel was ineffective for failing to object to the same. Petitioner is of the opinion that the elements of armed robbery and aggravated robbery are similar enough to substitute the latter charge for the former one.

Petitioner was charged with armed robbery and under the

---

[10] Minutes are Contained in the State Rec., Vol. I, pp. 28-29.

Louisiana Code of Criminal Procedure Article 814(22),[11] aggravated robbery is not included in the list determined by the legislature.  Therefore, the jury could not have been charged with the lesser responsive verdict of aggravated robbery, and an objection to the contrary would have been futile.  The logic here is cut and dry, if aggravated robbery is not on the statutory list of responsive verdicts it cannot be a responsive verdict. Petitioner's claim is without merit.  Again, due deference should be given to the state court's interpretation of the state laws that do not contravene U.S. Supreme Court precedent.

### Claim VIII: Trial Court Erred at the Multiple Offender Hearing

Petitioner claims that the trial court erred at the multiple offender hearing by failing to advise him of his right to remain silent before allowing him to admit his identity in connection with a prior felony conviction.  Petitioner relies on *State v. Johnson*, but misunderstands the law.  In *Johnson*, the Court states that "[w]ithout . . . advice [to remain silent] . . . acknowledgment or confession of . . . [a] prior felony conviction [is] invaild . . . ."  *State v. Johnson*, 432 So. 2d 815, 817 (La. 1983).  The petitioner did not acknowledge guilt or confess to being a multiple offender.  Petitioner did

---

[11] *See*, footnote 30, *supra*.

identify a fingerprint card that was taken the day of the trial as containing his fingerprints.  The State proved that petitioner was a multiple offender based on a prior conviction of possession of cocaine, where an expert witness was used in order to identify that the fingerprints taken at each of the two arrests were in fact that of the petitioner.  Since petitioner did not confess to being a multiple offender, but was found to be an habitual offender based on scientific evidence, fully independent of any questions admitted by petitioner, his claim, is without merit.

Accordingly, William Smith's petition for issuance of a writ of *Habeas Corpus* is **DENIED**, overruling his objections to the Magistrate's Report and Recommendation.  Further, said Report is adopted as the opinion of the Court, discussing the instant petition.

New Orleans, Louisiana this 30th day of June, 2008.

_____
UNITED STATES DISTRICT JUDGE